Equity requires that any claim which defendant has must be asserted against its assignor.

*Decree for plaintiff.*

LEVINE, P. J., and TERRELL, J., concur.

ROBERTSON, APPELLANT, *v.* POLTER, APPELLEE.

(Decided December 6, 1937.)

*Messrs. Bowman & Hanna,* for appellant.
*Mr. W. J. Mead,* for appellee.

LLOYD, J. On December 12, 1936, Leslie Robertson, as executor of the estate of Christian Bockenhauer, filed a complaint under sanction of Section 10506-67, General Code, alleging that he had good cause to believe that William Polter had in his possession certain specified personal property, consisting of certificates of deposit of certain named banks, a promissory note and a mortgage securing it, all of which belonged to the estate of Christian Bockenhauer, and praying for a writ of citation to be issued requiring Polter to ap-

pear in court to be examined as to his possession thereof.

Polter, who lived in Michigan, filed an answer, although not necessary or required, admitting the status of Robertson as executor and denying the other allegations of the complaint. He appeared in court at the time set for the hearing, bringing with him the property in his possession which, it was claimed, belonged to the Bockenhauer estate.

It having been stipulated that the specified certificates, note and mortgage, which bore no endorsements, were in the possession of Polter, they were offered and received in evidence.

Polter was a farmer, 45 years of age, and had known decedent ever since he was "about two years old." He had worked for him and had been a tenant on one of his farms for eight years. Polter's mother was a sister of the decedent's wife, whose name before marriage was Topel. Polter and the decedent were friendly and the decedent often visited him, frequently remaining for the night. Once Bockenhauer stayed at Polter's for a week and another time for eight weeks, for which no compensation was asked or paid, the decedent always saying "much obliged until you are better paid."

Polter first saw the property in dispute on May 23, 1936, at about 11:20 p. m., when the decedent and his wife were visiting at Polter's home. At this time Mrs. Bockenhauer was upstairs in bed. Polter, his wife and the decedent were downstairs. Mr. Polter's son, 15 or 16 years of age, was also upstairs in bed. The decedent was sitting on a couch and took the certificates of deposit, note and mortgage from the inside pocket of his coat and handed them to Polter saying "I am giving you these papers, and they are yours. I would rather you have them than the Topels." They "had a rubber band around them." "I took them," says Polter, "he

handed them to me and said, 'They are yours.' " "I put them in the closet and * * * left them there until I took them over to the bank box in Milan" where they remained until "I took them to Fremont and gave them to Mr. Mead, my attorney." The decedent, several times previous to the evening when he gave this property to Polter, had told him "he was going to give" him "something." Mr. Bockenhauer at a subsequent time, referring to the gift, said to Mr. Polter "I am tired out, if anything happens to me, you got those papers and they are yours."

The foregoing is the composite testimony of Mr. and Mrs. Polter. Another witness who had known Mr. Bockenhauer for a long time and called on him 2 or 3 days before his death, testified that he then spoke of his gift to Polter and said he had done it "because Mr. and Mrs. Polter were very kind to him."

It is contended that the property given to Polter was placed with him for safekeeping, but no evidence appears in the record justifying such a finding. It is contended that Section 11495, General Code, precludes Polter from testifying as to what the decedent said or did in relation to the claimed gift. It would be strangely incongruous if a person who is suspected of having "concealed, embezzled or conveyed away or of being or having been in the possession of any" of the property described in Section 10506-67, General Code, and, by authority thereof, is mandatorily cited into court to be examined with respect thereto, were prohibited from speaking in his own defense. It is apparent that Section 11495, General Code, is not applicable to proceedings had under this statute.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

CARPENTER and OVERMYER, JJ., concur.